## DONALSON *v.* THOMASON.

1. A mortgage on real estate, attested by but one witness who is not an officer authorized by law to attest a mortgage so as to authorize its registry, is not entitled to be recorded.
2. A mortgage on land, attested by only one witness, is not void; and if a subsequent purchaser buys with actual notice of the prior mortgage, he takes subject to it.

3. The record of a mortgage, made without due attestation or probate, will not be held to be constructive notice to a subsequent bona fide purchaser.
4. Actual payment of the purchase-money, or what is equivalent thereto, before notice of a defectively recorded mortgage, is necessary to the protection of a subsequent purchaser.
5. Where a purchaser buys land without notice of any mortgage thereon, and gives his negotiable notes therefor, which are negotiated by the payee, so as to cut off any defense, before the purchaser receives notice of the prior lien, and the price paid is a full and fair consideration, such person will be deemed to be a bona fide purchaser, and as such entitled to protection.
6. If there has been a partial payment (or what is equivalent) of the pur-- chase-money before notice, the purchaser will be entitled to protection to that extent; but appropriate equitable pleadings are necessary for this purpose.
7. The record of a mortgage defectively attested or probated amounts to no record of it. If the mortgage afterwards be attested so as to entitle it to record, it must be recorded anew in order for it to be constructive notice. The entry of the name of the new attesting official upon the old record is improper and will not suffice.
8. The clause in the mortgage, "the purchase-money for the sale of any timber on said land, or any use of same, to be applied as a credit on said note," even if construed as a power reserved to the mortgagor to sell the timber free of the mortgage lien, would not authorize a sale on credit.

APRIL 9, 1912.

Action of trespass. Before Judge Frank Park. Decatur superior court. May 11, 1911.

*Erle M. Donalson*, for plaintiff.

*R. G. Hartsfield* and *Hawes & Pottle*, for defendant.

EVANS, P. J. The action was in trespass for cutting timber, by John E. Donalson against T. I. Thomason. The plaintiff claimed title to the land and timber, and the defendant claimed title only to the timber on the land. The plaintiff was nonsuited, and error is assigned on this judgment. It was admitted that F. R. and C. R. Graham owned the land, and that both parties deraigned their respective titles from them. On April 6, 1906, F. R. and C. R. Graham executed a mortgage on the land to the Decatur County Bank to secure a debt of $2,500; the mortgage was recorded the next day. The Decatur County Bank foreclosed its mortgage, and also obtained a common-law judgment; and the land was sold, by virtue of executions based on these judgments, for the sum of $2,100, to the Decatur County Bank, and a deed made to it by the sheriff on October 8, 1908. On February 8, 1909, the Decatur County

54

Bank executed a quitclaim deed to the plaintiff. The common grantors, F. R. and C. R. Graham, on February 9, 1907, conveyed the timber on the land to Smith and Howell, who conveyed it to the defendant. The timber was cut and removed from the land after the plaintiff obtained his deed; and its value was proved. In moving for a nonsuit, the defendant insisted that the evidence disclosed that the mortgage from the Grahams to the Decatur County Bank was defectively executed, and illegally recorded; and that he and his vendors were bona fide purchasers for value, without notice of the lien of the mortgage.

1. It appeared that the mortgage was drawn by the plaintiff, who was a director of and attorney for the mortgagee, and signed by the mortgagors in his office and attested by him; and that the mortgagors left his office, taking the mortgage with them for the purpose of acknowledging their signatures before a notary public. It is clear from the evidence that at the time the mortgage was recorded, and when the sale of the timber was made by the Grahams to Smith and Howell, the mortgage had not been attested by a notary public, but that subsequently the mortgagors acknowledged their signatures before a notary public, and the notary's name was entered on the record as an attesting witness. Before a mortgage on real estate executed in this State can be admitted to record, it must be executed in the presence of and attested by or approved before a notary public, or justice of any court in this State, or a clerk of the superior court, and one other witness. Civil Code (1910), § 3257; *Gardner* v. *Moore,* 51 *Ga.* 268. As the mortgage was not attested in the manner required by law to authorize its registry, its record was not constructive notice of its existence.

2-6. At the time of the sale of the timber by the Grahams to Smith and Howell, the evidence discloses that they had neither actual nor constructive notice of their vendors' prior mortgage to the bank. Neither of the Grahams was introduced as a witness. It appears from the testimony, that the Grahams sold and conveyed this timber to Smith and Howell, and received in payment their two notes for $600 each, due at six and nine months, which were negotiated by the Grahams. It affirmatively appears that one of them had been negotiated by the Grahams prior to the time Smith and Howell had actual notice of the bank's mortgage; but the evidence fails to disclose when the other note was negotiated. Both

notes have been paid. A mortgage of real estate, attested by but one witness, is not void; and if a subsequent purchaser buys with actual notice of the prior mortgage, he takes subject to it. *Gardner* v. *Moore,* 51 *Ga.* 268. But if the subsequent purchaser be bona fide and without notice, his title will be superior to the mortgage. Civil Code (1910), § 3262. It is urged that inasmuch as Smith and Howell had not actually paid for the timber in money, but had only given their notes when they received notice of the bank's mortgage, they are not to be regarded as bona fide purchasers. It is a rule in equity that a bona fide purchaser without notice, to be entitled to protection, must be so, not only at the time of the contract or conveyance, but until the purchase-money is actually paid. *Phinizy* v. *Few,* 19 *Ga.* 66; *Mackey* v. *Bowles,* 98 *Ga.* 733 (25 S. E. 834). This results "from the doctrine that when the only feature of the transaction is the transfer of title from one party to another, all the equities which attended it in the hands of the grantor follow it into those of the grantee, and he can not claim exemption therefrom unless there has been some payment or expenditure on his part, without notice of their existence, which would render it inequitable to enforce them against him." Hetteredge v. Chapman, 36 Ia. 348. Actual payment may be made in money or its equivalent. 2 Warvelle on Vendors, § 611. Where the purchaser has executed negotiable notes, which have been actually negotiated, so as to render him liable thereon to the holder before receiving notice of a prior lien or equity, he will be treated as a bona fide purchaser and entitled to protection as such. Partridge v. Chapman, 81 Ill. 137; Digby v. Jones, 67 Mo. 104. A partial payment of the purchase-money before notice, although not sufficient to invest the vendee with the character of a bona fide purchaser as regards the entire estate purchased, will entitle him to invoke the aid of the equitable principle that he who asks equity must do equity and reimburse the amount actually paid. *Carter* v. *Pinckard,* 68 *Ga.* 817. The case last cited was in ejectment. The plaintiff acquired his title from a grantee of the defendant, who pleaded that her deed to the plaintiff's grantor was procured by fraud, and that the plaintiff had notice of the fraud at the time of his purchase. It appeared that the plaintiff paid for the land partly in cash and partly with a note, which did not appear to have been negotiated; and the court ruled in that case, that, in order "to raise the question of protecting him

to the extent of a portion of the purchase-money which he has paid before notice, there must be appropriate pleadings." In the case at bar the purchaser gave two notes. It affirmatively appears that one of them had been negotiated before the purchaser had notice of the prior mortgage, and to the extent of this note there was clearly a payment equivalent to money. As to the other note there is no evidence as to the time it was negotiated. So that in the present state of the record Smith and Howell can not be regarded as bona fide purchasers of the entire estate in the timber. The defendant purchased the timber from Smith and Howell and took an assignment of their lease on May 11, 1909. The evidence discloses that he paid $725 in cash and gave his note for $100, which was subsequently paid (at what time does not appear). At the time of his purchase the defendant had no knowledge of the prior mortgage of the bank. He was afterwards informed of its existence, but it does not appear whether he had paid the $100 purchase-money note at the time. So that the evidence does not disclose that he was a bona fide purchaser for value of the entire interest, and there are no equitable pleadings praying that he be protected to the extent of the actual cash which he paid.

Allusion is made, in the oral testimony, to the record of the conveyance of the timber from the Grahams to Smith and Howell. The date of its record, and whether it was properly attested for record, is not made to appear. Hence the question is not presented as to whether, under our registry laws, a subsequent purchaser of land under a recorded deed, who has made a partial payment, without notice actual or constructive of a prior mortgage, acquires title free of such mortgage.

7. The record of a mortgage, improperly made for lack of due attestation, can not be amended by the mortgagors' subsequently acknowledging their signatures before a notary public who attests the mortgage, and the addition of the notary's name to the original record. If the mortgage was improperly recorded for lack of due attestation, and the same is afterwards properly attested, the mortgage must be recorded anew, because its registration would date from that time and not from the time of its original improper record.

8. The mortgage from the Grahams to the Decatur County Bank contained this clause: "Provided, however, that this conveyance shall be void when the following described debts are fully paid off

and discharged, to wit, one note of even date with these presents, due twelve months from date, for $2,500.00, signed by said grantors and payable to said grantee, and given in part purchase-money of said land described in this mortgage, the purchase-money for the sale of any timber on said land, or any use of same, to be applied as a credit on said note." It is contended that the proviso of the mortgage operates as a power of sale to the mortgagors to sell the timber upon the land, and that the sale thereof to Smith and Howell was a proper exercise of this power. We hardly think that this clause of the mortgage can be construed as reserving to the mortgagors a power to sell the timber; but, even if it be construed as the reservation of a power to sell, it is manifest that the parties did not contemplate a sale on credit. As a general rule, where power to sell is given and no terms of sale are stated in the power, it will be construed to mean a sale for cash. 31 Cyc. 1117. As the sale to Smith and Howell was not for cash, they could not hold the timber under this contention.

Under the evidence the plaintiff was entitled to go to the jury. We have discussed the various aspects of the case as presented by the evidence, so that on the next trial the case may be more fully developed and tried under the principles of law herein expressed.

*Judgment reversed. All the Justices concur.*